# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
## Columbia Division

NIGEL E. JACKSON, *on behalf of himself and all similarly situated individuals,*

    Plaintiff,

v.

GENUINE DATA SERVICES, LLC,

    Defendant.

Civil Action No. 3:22-cv-00985-MGL

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Nigel E. Jackson, by Counsel, on behalf of himself and all similarly situated individuals, brings the following Class Action Complaint against the Defendant Genuine Data Services, LLC ("GDS"). In support of his Complaint, Plaintiff alleges as follows:

### INTRODUCTION

1. This is a consumer class action for damages, costs and attorney's fees under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") brought against GDS, a consumer-reporting agency that routinely violates the FCRA's basic protections by failing to ensure that the information that it sells about consumers is as accurate as possible and reportable under the law.

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

3. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

4. Whenever a consumer-reporting agency prepares a consumer report, § 1681c prohibits consumer reporting agencies from reporting adverse items of information that antedate the report by more than seven years. Pertinent to this lawsuit, the FCRA prohibits the reporting of arrest and other law enforcement records that predate the report by more than seven years, unless those records are a record of conviction. 15 U.S.C. § 1681c(a). Because traffic infractions are not criminal convictions, they cannot be reported more than seven years after the fact. To further strengthen the protections of § 1681c, the FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

5. This case arises because GDS routinely violates these FCRA provisions in its issuance of consumer reports to resellers like non-party RealPage. RealPage, using the moniker "The Leasing Desk," sells consumer reports to landlords for use in tenant screening. These reports are governed by the FCRA. 15 U.S.C. § 1681b(a).

6. In this instance, GDS provided data about Plaintiff to The Leasing Desk, which The Leasing Desk then furnished to Plaintiff's potential landlord. The GDS report included a decades-old traffic citation that was not permitted to be reported under the FCRA's obsolescence provision.

7. After Plaintiff's landlord denied Plaintiff's rental application as a result of this report, Plaintiff requested a copy of his full file from RealPage, from which he was able to learn that GDS was the source of the outdated traffic citation.

8. Therefore, Plaintiff brings nationwide class claims against GDS for its failure to properly filter such outdated information from reports it sells to resellers like The Leasing Desk in violation of 15 U.S.C. § 1681c(a).

9. Plaintiff also asserts a class claim against Defendant under Section 1681e(a), as it plainly has not implemented reasonable procedures designed to avoid violating Section 1681c(a)'s requirement that non-criminal convictions age-off reports after seven years.

## JURISDICTION

10. The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this Judicial District. For example, GDS obtained, housed, and distributed the inaccurate data about Plaintiff and Class Members to and from offices located in Chapin, South Carolina.

12. GDS successfully asserted as much in convincing an Eastern District of Virginia court that it lacked personal jurisdiction over GDS. GDS is therefore estopped from arguing here that this Court lacks personal jurisdiction over it.

13. Both jurisdiction and venue lie as the acts GDS committed and that damaged Plaintiff and Class Members occurred in whole or in part in this venue.

## PARTIES

14. Plaintiff is a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

15. Defendant GDS is a Delaware limited liability company doing business in the State of South Carolina and can be served through its registered agent, LegalInc Corporate Services, Inc., 1591 Savannah Highway, Suite 201, Charleston, South Carolina 29407.

16. GDS is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

17. Specifically, Defendant GDS sells consumer reports, also called background reports, tenant screening-reports, and credit reports, to others who in turn supply information to landlords to use in deciding whether to rent to a prospective tenant. These reports include the prospective tenant's criminal history, sex offender status, landlord tenant court records, and credit information.

18. Defendant GDS regularly operates in this District and Division. It collects, houses, and reports data from offices located in this District and Division, and employs individuals tasked with engaging in the data reporting that underpin Plaintiff's claims.

19. GDS collects court records using computer servers and employees located here. It keeps those court records here. GDS employs individuals to conduct its operations here.

20. It sells its data to third party customers from this District and Division. And, as it pertains to the injuries alleged herein, those injuries were caused by conduct originating in this District and Division.

21. Discovery will show that Defendant has sold consumer reports regarding thousands of residents of Virginia, North Carolina, South Carolina, and West Virginia and people with public records from those states to its clients.

22. Discovery will show that when it sells consumer reports to its clients, who are often also consumer-reporting agencies, Defendant GDS knows the identity of the ultimate end-user of the report.

23. Discovery will show that Defendant GDS has sold hundreds or thousands of consumer reports that were ultimately provided to end-users from within this District and Division.

24. In addition, to assembling the consumer reports that it sells, Defendant accesses, stores, and reproduces court records and other public records from courts and other government entities from within this District and Division.

25. GDS has also explained, again in the Virginia litigation, that the documents and employee witnesses with knowledge as to the reporting about Plaintiff are located in this District and Division.

**FACTS**

26. In December 2019, Plaintiff applied to rent an apartment in the District at The Nexus at West Alex apartment complex.

27. As part of the application process, Plaintiff was required to undergo a background report.

28. Plaintiff's landlord ordered Plaintiff's background report from The Leasing Desk on or around December 9, 2019.

29. When The Leasing Desk received the Nexus at West Alex's request for Plaintiff's report, it requested criminal-record information from GDS.

30. Upon information and belief, The Leasing Desk identified the end-user of Plaintiff's report when it requested his information from GDS.

31. GDS obtained those records from the Executive Secretary of the Supreme Court of Virginia in Richmond.

32. In response to The Leasing Desk's request, GDS provided those Virginia traffic records attributable to Plaintiff.

33. In particular, GDS provided the following information to The Leasing Desk:

Criminal & Other Records Run date 3/17/2020
**Offender information**

| ID | Jur code | Name | Birth date | SSN | Photo/Description |
|---|---|---|---|---|---|
| 1 | VAAOC | JACKSON, NIGEL EDWARD | 1/10/xxxx | | SEX: m RACE_ETHNIC: black |

Offense information - ID column indicates association between offender and offense

| ID | Jur code | Disposition | Type/Level | Charge | Record Date | ORIC/ County | Note |
|---|---|---|---|---|---|---|---|
| 1 | VAAOC | GUILTY IN ABSENTIA | | NO CO TAG-B \| Original Offense: NO CO TAG-B | 07/07/2000 | PRINCE WILLIAM GD \| Case#153GT0002239800 | |

**Source and Vendor Information**

| Jur Code | Source | Vendor Information |
|---|---|---|
| VAAOC | Virginia Courts History | Genuine Data Services, LLC |

34. As seen above, this information included a traffic record from July 2000—almost two decades prior to the report's creation.

35. This entry stated that Plaintiff had been found "Guilty in Absentia" for the traffic infraction of "NO CO TAG-B."

36. A large number of traffic infractions are non-criminal, including in Virginia, where Plaintiff's infraction occurred. Jordan Blair Woods, *Decriminalization, Police Authority, and Routine Traffic Stops*, 62 UCLA L. REV. 672, 698 (2015) ("Since 1970, twenty-two states have decriminalized the bulk of minor traffic offenses by removing criminal penalties and reclassifying the offenses as noncriminal offenses. Those states are Alaska (1976), Arizona (1983), Colorado (1982), Connecticut (1975), Florida (1974), Hawaii (1978/1993), Idaho (1982), Indiana (1981), Maine (1975), Massachusetts (1986), Michigan (1978), Nebraska (1976), New Hampshire (1974), New York (1970), North Carolina (1986), North Dakota (1973), Oregon (1975), Rhode Island

(1975), Vermont (1990), Virginia (1977), Washington (1979), and Wisconsin (1971). In these states, noncriminal traffic violations are punishable by fine only with no possibility of immediate incarceration.[1] *See* VA. CODE ANN. § 18.2-8 ("Traffic infractions are violations of public order as defined in § 46.2-100 and not deemed to be criminal in nature.").

37. Because these traffic infractions are not criminal convictions, they cannot be reported more than seven years after the fact. 15 U.S.C. § 1681c(a)(5).

38. By reporting Plaintiff's non-criminal infraction from almost two decades prior on its report, Defendant violated § 1681c.

39. Discovery will show that after The Leasing Desk received this information from GDS, it manipulated the data to conform with the formatting of its background report it ultimately prepared and provided to The Nexus at West Alex on or around December 9, 2020.

40. As a result of this outdated information in Plaintiff's credit file, The Nexus at West Alex denied Plaintiff's rental application.

41. That Defendant reported the information at all confirms its lack of procedures designed to curb violations of Section 1681c(a). Reasonable procedures would, for example, examine the type of charge and determine whether it was truly criminal in nature such that a person might be "convicted" as that term us used in Section 1681c(a). Where, like with Plaintiff here, such charges are not criminal, the results cannot be convictions and therefore cannot appear on reports after seven years.

42. Defendant's failure to have in place procedures designed to prevent such errors violates Section 1681e(a).

---

[1] Available at https://www.uclalawreview.org/pdf/62-3-3.pdf

43. After receiving this denial of housing, Plaintiff wrote to The Leasing Desk and requested all information in the file that it maintained about him.

44. In response to Plaintiff's request, The Leasing Desk sent Plaintiff a letter dated December 19, 2019 and stated that it was providing him with a copy of the report that it delivered to The Nexus at West Alex.

45. That report informed Plaintiff for the first time that GDS was at least one source of the outdated Virginia traffic records The Leasing Desk reported.

### *Defendant's Business Practices*

46. Discovery will show Defendant produces thousands of reports to The Leasing Desk alone each year.

47. Discovery will further reveal that Defendant uses standardized procedures and algorithms to generate the reports that it sells to customers like The Leasing Desk. As part of this standard process, Defendant does not remove traffic infractions from a consumer's report as required by the FCRA's obsolescence provision, 15 U.S.C. § 1681c.

48. Indeed, discovery will confirm that Defendant has no process in place to determine whether traffic violations are criminal such that a conviction can be rendered. Defendant simply obtains the records as they are from its third-party data vendor and inserts them into reports without substantive review or consideration as to whether they fall outside any of the permissions in Section 1681c(a) for reporting of older records.

### *Defendant Acted Willfully*

49. At all times relevant to this lawsuit, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. GDS's conduct was intentionally accomplished through its intended procedures; these procedures have continued

despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and GDS will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

50. In addition, Defendant's willful conduct will also be established by the following:

  a) Defendant takes no action to determine if the records older than seven years it reports are criminal convictions are not. This failure is unreasonable and willful.

  b) Defendant has a standardized procedure whereby if something is listed as a traffic infraction, Defendant adds a finding of guilty to that record even in states where there is no such finding of guilt. Adding such editorial comments is unreasonable and willful.

  c) The FCRA was enacted in 1970; Defendant has had decades to become compliant.

  d) Defendant is a corporation with access to legal advice through its own general counsel's office and/or outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful.

  e) Defendant knew or had reason to know that its conduct was inconsistent with FTC and CFPB guidance, case law, and the plain language of the FCRA.

  f) Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

  g) Defendant's violations of the FCRA were repeated and systematic.

h) Defendant's FCRA violations were carried-out according to Defendant's established policies and procedures; the violations alleged herein were not accidental or isolated to Plaintiff.

## CLAIMS FOR RELIEF

### COUNT I – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c(a)
### Class Claim

51. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

52. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for violations of Section 1681c(a) for himself and on behalf of a class (the "Obsolescence Class") defined as:

> All natural persons residing in states that comprise the federal Fourth Judicial Circuit (a) who were the subject of a report sold by Defendant; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) containing a traffic infraction; (d) where the disposition of the traffic infraction predated the report by seven years.
>
> Excluded from the class definition are any employees, officers, directors of Defendant RealPage, any attorney appearing in this case, and any judge assigned to hear this action.

53. **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

54. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions

predominate over the questions affecting only individual class members. The common questions include: (1) whether GDS was required by 15 U.S.C. § 1681c(a) to delete the information after 7 years; (2) whether GDS's conduct constituted a violation of the FCRA; and (3) whether GDS's conduct was willful.

55.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

56.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

57.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and

11

expense to all parties and to the court system presented by the legal and factual issues raised by GDS's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

58. As described above, GDS failed to remove traffic citation information that clearly antedated the report by more than 7 years.

59. GDS violated § 1681c(a) of the FCRA as to the Plaintiff and each of the class members by reporting each consumer's traffic citations for longer than the seven-year period permitted by the FCRA.

60. Plaintiff and each putative class member suffered real and actual harm and injury.

61. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in GDS's files and reports.

62. In each instance, each class member's credit report contained derogatory information that GDS was legally obligated to remove.

63. GDS's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering RealPage liable under 15 U.S.C. § 1681o.[2]

64. As a result of these FCRA violations, GDS is liable for statutory damages from $100 to $1,000 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n.

---

[2] Plaintiff seeks statutory and punitive damages on behalf of himself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant's violation.

## COUNT II – FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(a)
## Class Claim

65.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

66.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for violations of Section 1681e(a) for the same class identified above.

67.     **Numerosity.** Fed. R. Civ. P 23(a)(1). Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

68.     **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether GDS had in place reasonable procedures designed to avoid violations of 15 U.S.C. § 1681c(a); (2) whether GDS's conduct constituted a violation of the FCRA; and (3) whether GDS's conduct was willful.

69.     **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

70.     **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to,

the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

71.     **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by GDS's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

72.     As described above, GDS failed to remove traffic citation information that clearly antedated the report by more than 7 years.

73.     GDS violated § 1681c(a) of the FCRA as to the Plaintiff and each of the class members by reporting each consumer's traffic citations for longer than the seven-year period permitted by the FCRA.

74. In turn, GDS had in place no procedures designed to present these violations, which are apparent by even a cursory review of the records GDS is reporting.

75. Plaintiff and each putative class member suffered real and actual harm and injury.

76. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in GDS's files and reports.

77. In each instance, each class member's credit report contained derogatory information that GDS was legally obligated to remove.

78. GDS's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering RealPage liable under 15 U.S.C. § 1681o.[3]

79. As a result of these FCRA violations, GDS is liable for statutory damages from $100 to $1,000 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, on behalf of himself and the putative class members, moves for class certification and for statutory and punitive damages, as well as his attorney's fees and costs against the Defendant; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**NIGEL E. JACKSON**

By: ___/s/ Penny Hays Cauley___
Penny Hays Cauley, Fed. ID No. 10323
William K. Geddings, Fed. ID No. 12584
HAYS CAULEY, P.C.

---

[3] Plaintiff seeks statutory and punitive damages on behalf of himself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant's violation.

1303 West Evans Street
Florence, SC 29501
Telephone: (843) 665-1717
Fax: (843) 665-1718 Facsimile
Email:  phc917@hayscauley.com
Email:  will@hayscauley.com

Leonard A. Bennett (*pro hac vice* forthcoming)
Craig C. Marchiando (*pro hac vice* forthcoming)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly (*pro hac vice* forthcoming)
Andrew J. Guzzo (*pro hac vice* forthcoming)
Casey S. Nash (*pro hac vice* forthcoming)
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email:  casey@kellyguzzo.com

*Counsel for Plaintiff*